L. E. SNYDER, Jr., Marjorie J. Snyder and Family Theaters, Inc., a Corporation, Plaintiffs in Error,

v.

TULSA ENGINEERING and CONSTRUCTION COMPANY, Defendant in Error.

No. 37196.

Supreme Court of Oklahoma.

May 14, 1957.

Rehearing Denied June 18, 1957.

Wheeler & Wheeler, John M. Wheeler, John Wheeler, Jr., Robert L. Wheeler, Tulsa, for plaintiffs in error.

George Schwabe, and Poe, Murdock & Langford, By Jack L. Langford, Tulsa, for defendant in error.

BLACKBIRD, Justice.

This appeal involves an action instituted by defendant in error, as plaintiff, to recover from the plaintiffs in error, as defendants, the principal sum of $5,600 allegedly due it for certain work and labor referred to as "earth work" performed by plaintiff in the construction of an open-air, or outdoor, movie theater, known as the "Bellaire Drive-In Theater" on West 51st Street in Tulsa, Oklahoma, and to foreclose its claimed mechanic's lien therefor. The parties will hereinafter be referred to as they appeared in the trial court.

There is no question but that plaintiff performed so-called "earth work" in preparing the present site of the drive-in theater, hereinafter referred to merely as the "Bellaire", for use as such a theater.

For some time previously the defendant, L. E. Snyder, had been president of a corporation known as "Modernaire Theaters" which owned and operated two other drive-in theaters in Tulsa, referred to as the "Apache" and the "Modernaire." On two previous occasions plaintiff had done bits of earth work to accomplish repairs and/or enlargements of those theaters.

In January, 1953, after Snyder had decided to lease the tract on West 51st Street for the site of the new drive-in theater here involved, he contacted Messrs. E. V. James and J. G. Michaelson, officers and directors of the plaintiff corporation, and indicated he wanted said company to do the earth work therefor. Later, when he obtained, in the name of himself and his wife, the defendant Marjorie J. Snyder, a lease on the proposed site of the Bellaire, and, after conversations between him and one or both of the above-named officers of the plaintiff corporation, including an initial one in which the latter were apprised of the location of said site, and another subsequent one held in Snyder's home one Sunday morning, in which he asked for an estimate on at least a portion of the work, a figure was quoted Snyder over the telephone, and, at his instance, the preliminary grading and dirt moving on the tract was commenced. After starting the second phase of the work, viz., the building of the ramps for automobiles to park on, so their occupants could see the movies projected on the large open-air screen, as distinguished from the preliminary earth

work referred to as "general", or "preliminary", grading work, it was discovered that if the ramp work was completed the way it had been commenced, the occupants of parked autos on ramps toward the rear of the theater could not see all of the movie screen over the tops of autos on ramps closer to the screen, or screen tower; and the rainfall and other surface water would not properly drain off the theater site from between the various ramps. Also it was discovered that additional "road oil" and crushed rock would have to be spread on the ground to keep cars from becoming stuck in mud at certain places on the site. Discovery of these defects entailed additional work.

At some time before the work was commenced, or completed, Mr. Snyder organized the defendant corporation, "Family Theaters, Inc.", of which a Mrs. Eloise Steger became president and he became an officer and stockholder. Thereafter, in April, 1953, Snyder and his wife assigned their lease on the Bellaire site to said corporation. By June, 1953, when plaintiff had performed all of its earth work on this site, except some "rolling" to be done the last day, it had received a total of $2956.00, paid to it in three installments, by three separate checks issued on various dates by Family Theaters, Inc. A few days later Mr. James appeared at the Apache Theater office used by Mr. Snyder and Mrs. Steger with "work sheets", representing that a total sum of $5,948, in addition to the above-mentioned sum, was due plaintiff for work it had performed at the Bellaire. When Snyder protested it, James reduced the total of this bill by $348, and subsequently plaintiff mailed Snyder a bill, or "invoice", dated June 29, 1953, representing the balance due it, as $5,600.

After several efforts to collect this sum, plaintiff instituted the present action, praying, in the first cause of action of its second amended petition, for recovery of judgment in the sum of $5,600 against both Snyder and his wife, and Family Theaters, Inc., as defendants. In its second alleged cause of action, plaintiff asked foreclosure of its claimed mechanic's lien on the theater property in the same amount. Plaintiff's alleged right to recovery of the money judgment was based on two theories: (1) That during the above-mentioned conversations which preceded the construction of the theaters, Snyder had specifically agreed to pay for plaintiff's work at certain rates; and, (2) That the transaction which allegedly occurred at the theater office, after the work was completed, when Mr. James reduced the amount of the bill from $5,948 to $5,600, constituted an "account stated", by reason of which the defendants were also liable.

In her separate answer to the above-mentioned pleading, Mrs. Snyder disclaimed any interest in the theater leasehold and the subject of the action, and, by cross petition, asked that she be granted judgment against plaintiff in the reasonable sum of $750 as a fee for the attorneys she had employed to represent her in the action. In their separate answers, Mr. Snyder and the other defendant, Family Theaters, Inc., coupled general denials with certain admissions and additional allegations. They both admitted, among other things, that Snyder had entered into an oral contract with plaintiff to do the earth work necessary in the construction of the Bellaire, but they alleged, in substance, that said work was to include both the building and "compacting" of the ramps, as well as the preliminary grading, all for the total sum of $2,956, which had already been paid plaintiff; and they denied that they, or either of them, then owed plaintiff any sum whatsoever. The defendant Snyder specifically denied (as alleged by plaintiff) that he had ever agreed to an account stated of $5,600, or any other amount, and disclaimed any direct interest in the leasehold estate, against which plaintiffs' claimed lien was sought to be foreclosed; and alleged that his actions in the matter of the construction of the theaters were all in the capacity of a representative of Family Theaters, Inc., which fact was fully known and understood by plaintiff. Both Snyder and the Family Theaters, Inc., alleged that, by the terms

of the oral contract with plaintiff all of the latter's work was to be completed not later than May 15, 1953; and, in an amended cross petition, the theaters corporation alleged that said work was done in an unworkmanlike manner and so tardily and ineptly that it suffered certain damages totalling $10,026.79, for which it asked judgment, together with $750 in attorney's fees, over against the plaintiff.

At the trial, plaintiff, in attempting to refute the above-mentioned defense position that the $2,956 paid it had been the agreed price for all of this work and to establish that said sum was the agreed consideration for only the preliminary, or general, grading of the theater's site, was alowed, over the objection of defense counsel, to introduce in evidence an unsigned "letter" dated March 16, 1953, addressed to Snyder by plaintiff, but admittedly never mailed to, nor received by, him, in which the $2,956 was quoted as the price for "Grading the site as per stakes" only, and mentioning a rate of $10 per hour for "Building ramps with Motor grader", and further stating: "Other grading outside staked area Machine time at hourly rates."

At the conclusion of plaintiff's evidence on its first cause of action, the trial court sustained Mrs. Snyder's demurrer thereto, but overruled the separate demurrers interposed by the other two defendants. After the latter had introduced their evidence as to said cause of action, the case was submitted to the jury under the court's instructions, and a general verdict was returned for plaintiff in the amount of $5,600. Thereafter, the court proceeded to hear the evidence as to plaintiff's second cause of action, which concerned the lien foreclosure phase of the case. At the conclusion of this non-jury trial, the court then entered a judgment for plaintiff which included, among other things, the recovery of the $5,600 in accord with the aforesaid verdict, and foreclosure of plaintiff's claimed mechanic's lien in the same amount, and dismissal of said cause as to Mrs. Snyder, as well as a specific denial to her of any recovery against plaintiff as a fee for her attorneys.

In the present appeal, defendants seek reversal of said judgment on several grounds, but the only ones we deem necessary to consider have to do with the trial court's disallowance of the attorney's fee Mrs. Snyder sought, and its alleged error in admitting the unsigned and undelivered "letter" above described.

■ As to the first mentioned ground, defense counsel contend that Tit. 42 O.S. 1951 § 176, prescribing entitlement to recovery of a reasonable attorney's fee for "the party for whom judgment is rendered" in actions to enforce liens, is applicable to any successful party, whether he or she be defendant or plaintiff. In support of this contention they cite a statement in Keaton v. Branch, 104 Okl. 287, 231 P. 289, and certain cases in which defendants have had judgment for attorney's fees in lien foreclosure actions. The latter, however, were cases in which defendants defeated the lien claimants' attempts to foreclose their liens on property, while here Mrs. Snyder did not do that, but merely disclaimed any interest in the property herself. Leasburge v. Horner, 110 Okl. 162, 236 P. 880, points out the distinction between defendants like Mrs. Snyder, and the first mentioned class; and is determinative of the matter. Nor does the fact that there was included in the journal entry of the judgment in this case, a finding that Mrs. Snyder was "a proper party defendant" to the action, alter this conclusion, or constitute a material distinction between this case and the cited one, under the circumstances presented here.

■ As to the trial court's admission of the aforesaid unsigned and undelivered letter, plaintiff concedes this was error and makes no contention that said writing was admissible for any purpose. To said error, however, it maintains that the "harmless error" rule should apply and denies that any prejudice resulted to the defendant therefrom. We do not think the record supports plaintiff's summary disposal of the prejudice factor. It will be remembered that

plaintiff sought recovery on two theories. The first was that Snyder had, in advance of the commencement of work on the Theater site, entered into a contract with plaintiff to pay it at certain rates for construction of the ramps thereon, over and above, and in addition to, the $2956.00, which it claimed he, at that time, orally agreed to pay for just the preliminary, or general, grading of said tract. Then, plaintiff also pleaded in the alternative, that (if Snyder didn't so agree in advance of the commencement of this work) he later, after the work was all completed, entered into an agreement with plaintiff to pay the $5,-600 for the "ramps and completion work" as the basis of an "account stated", in return for Mr. James' agreement to reduce plaintiff's bill to that figure. As nowhere in his instructions to the jury, including his description of the pleadings, did the trial judge mention this alternative theory, nor give the jury any criterion by which to determine it, we think it reasonable to assume that the verdict was based upon plaintiff's other theory, which might be referred to as the "original contract" theory. In this view of the matter, the question then is: Without the inadmissible "letter", was there sufficient evidence to support the jury's determination that (before the construction of the Bellaire began) plaintiff entered into an agreement with either Snyder or Family Theaters, Inc., to pay it (in addition to the $2,956) for building the ramps at the rate of $10 per hour, of which charges plaintiff's original claim of $5,948 was largely made up, and, without which, the verdict of $5,600 would have no proper foundation, especially since plaintiff sought no recovery on a quantum meruit basis? As the record contains insufficient evidence to establish such an agreement, without said "letter", then we must conclude that said exhibit constituted the sole basis for fixing plaintiff's recovery at $5,600, and that its admission was therefore prejudicial.

We cannot agree with plaintiff's contention that said exhibit may be treated like erroneously admitted cumulative evidence, in that the matters and things thereby indicated were established by other admissible evidence. In support of this contention, plaintiff's counsel says Mr. James and Mr. Michaelson "testified in detail to the terms of the contract with Snyder"; but we have thoroughly examined their testimony without finding any statement that one term of said contract was to pay for the use of a motor grader to build ramps at the rate of $10 per hour. In testifying about his aforesaid Sunday morning meeting with Mr. Snyder in the latter's home, Mr. James said he told Snyder:

> "* * * the cutting on the ramps and the finishing work, after the ground was—the area was leveled up to the plans and specifications or plat would be done by an hourly rate of *so much* per machine *like we had done for him in the past on the other theatres that we had worked on.*" (Emphasis ours.)

And Mr. Michaelson, in testifying about the rates at which the work was billed, stated: "* * * we haven't changed those rates since we started the company just ten years ago." Neither of these witnesses testified however that a rate for such work was specified in the oral contract they entered into for plaintiff with Snyder, or that he ever agreed to pay for such work at any specific rate or that he knew, or remembered, when the contract was entered into, what rate it had been plaintiff's custom to charge for such work. Without proof, other than the inadmissible "letter", that there was a meeting of minds on this claimed feature of plaintiff's alleged contract with Snyder, or Family Theaters, Inc., said contract lacked definiteness and certainty as to any agreement to pay plaintiff any sum over and above the $2,956. Also, we find that more than one witness was examined with reference to said Exhibit and it is not unreasonable to assume that it was thoroughly fixed in the minds of the jurors when they began their deliberations. In view of the foregoing, we think there was a sufficient showing of probable prejudice from the admission of said "let-

ter" that this error cannot be said to be harmless under the rule adhered to by this court. As we have determined that a new trial should be accorded the defendants L. E. Snyder, Jr., and Family Theaters, Inc., on account of said error, we deem it unnecessary and inappropriate to discuss, or pass upon, other alleged errors.

The judgment of the trial court is affirmed to the extent of its dismissal of the action as to the defendant, Mrs. Marjorie J. Snyder, and its disallowance of her claim for attorney's fees. It is reversed in other respects, and remanded to the trial court with directions to grant the defendants, L. E. Snyder and Family Theaters, Inc., a new trial.

CORN, V. C. J., and DAVISON, JOHNSON, WILLIAMS, JACKSON and CARLILE, JJ., concur.